UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DISH NETWORK, L.L.C., and<br>ECHOSTAR TECHNOLOGIES, L.L.C.,<br><br>Plaintiffs,<br><br>v.<br><br>ORLANDO ESPARZA,<br><br>Defendant. | CIVIL ACTION NO.<br><br>SA-09-CA-0244 FB (NN) |

**REPORT AND RECOMMENDATION**

TO:   Honorable Fred Biery
      Chief United States District Judge

This report and recommendation addresses the plaintiffs' motion for summary judgment.[1] I have jurisdiction to issue this report and recommendation under 28 U.S.C. § 636(b) and the district court's order referring all pretrial matters to me for disposition by order or recommendation, where statute constrains my authority.[2] The district court has jurisdiction over this case because it involves questions of federal law.

**Nature of the Case**

This is a communications interception case. Plaintiff Dish Network, L.L.C. (Dish Network) is a direct broadcast satellite television service provider that provides programming to service subscribers. Programming is restricted to subscribers via proprietary encryption of signal

---

[1]Docket entry #14.

[2]Docket entry #5.

transmission. Plaintiff Echostar Technologies, L.L.C. (Echostar) designs, manufactures, and distributes the reception hardware and software required for subscribers to receive and de-crypt the programming transmitted by Dish Network. Echostar supplies each Dish Network subscriber with a receiver "smart card," or Integrated Receiver/Decoder ("IRD"). The IRD allows Dish Network to control programming access consistent with individual levels of subscription.

Defendant Orlando Esparza is a former subscriber who held a subscription account from November 2003 until March 2007. As part of his Dish Network subscription, Esparza received four IRDs and possessed them until April 4, 2007, when he returned the IRDs to Dish Network. Echostar tested the IRDs and determined that an IRD had been modified to access Echostar's proprietary software and hardware, and programming not authorized by Dish Network.

On March 30, 2009, Dish Network and Echostar sued Esparza for: (1) unauthorized reception of satellite signals in violation of 47 U.S.C. § 605(a) (Count 1); (2) assembly, manufacture, or modification of device or equipment in violation of 47 U.S.C. § 605(a) and 47 U.S.C. § 605(e)(4) (Count 2); (3) circumvention of copyright protections in violation of 17 U.S.C. § 1201 (Count 3); (4) unauthorized interception of electronic communications in violation of 18 U.S.C. § 2511(1) (Count 4); and (5) interception of communications in violation of Tex. Civ. Prac. Rem. Code § 123.001 (Count 5).[3]

Esparza, acting *pro se*, answered with a general denial on April 30, 2009.[4] Because Esparza proceeded *pro se*, I advised him about the necessity of responding to discovery requests

---

[3]*See* docket entry #1.

[4]*See* docket entry #4.

and motions.[5] After the discovery deadline passed, the plaintiffs moved for summary judgment on Count 2—assembly, manufacture, or modification of device or equipment in violation of 47 U.S.C. § 605(a) and 47 U.S.C. § 605(e)(4). Esparza was served with the motion on January 28, 2010.[6] I advised Esparza about the need to respond to the motion, but Esparza did not respond.[7] The plaintiffs are entitled to summary judgment if the documentary evidence shows no genuine issue of material fact and if the plaintiffs are entitled to judgment as a matter of law.[8]

### Whether Summary Judgment Is Appropriate

The plaintiffs assert that summary judgment is appropriate as to Count 2 because there is no genuine issue of material fact as to any element of their claim.[9] Count 2 alleges a violation of 47 U.S.C. § 605(e)(4)(3). That provision prohibits the modification of "any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services." Although the modification of an electronic device is not listed as a prohibited practice under 47 U.S.C. § 605(a),[10] the Fifth Circuit has

---

[5]*See* docket entry #12.

[6]*See* docket entry #14, certificate of service.

[7]*See* docket entry #15.

[8]Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[9]Docket entry # 14, p. 1.

[10]47 U.S.C. § 605(a) lists the following actions as prohibited practices with regard to unauthorized interception:

> (1) "[N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall

interpreted the inclusion of the language "modification" in section 605(e)(4) as creating a prohibited practice.[11]

A person aggrieved by a violation of section 605(e)(4) may "bring a civil action in a United States district court"[12] and seek either actual or statutory damages.[13] The plaintiffs properly qualify as "persons aggrieved" under section 605(e)(4), because they have proprietary rights in intercepted communications.[14] The plaintiffs attested that Esparza's actions negatively

---

divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . ."

(2) "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."

(3) "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

(4) "No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication . . . knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication . . . or use such communication . . . for his own benefit or for the benefit of another not entitled thereto."

[11]*See DIRECTV v. Robson*, 420 F.3d 532, 542-45 (5th Cir. 2005) (discussing section 605(e)(4) as providing for a prohibited practice applying to private end-users).

[12]*See* 47 U.S.C. § 605(e)(3)(A).

[13]*See* 47 U.S.C. § 605(e)(3)(C)(i).

[14]47 U.S.C. § 605(d)(6) defines an aggrieved person as "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming, and, in the case of a violation of paragraph (4) of subsection (e) of this section, shall also include any person engaged in the lawful manufacture, distribution, or sale of equipment necessary to authorize or receive satellite cable programming."

impacted Echostar's revenues and proprietary hardware, and that Esparza's actions harmed Dish Network's revenues and contractual and prospective business relations.[15]

To support their motion for summary judgment, the plaintiffs rely, in part, upon deemed admissions. The plaintiffs sought admissions from Esparza, but Esparza did not respond.[16] Because Esparza did not respond, the admissions sought are deemed admitted.[17]

The plaintiffs also submitted two affidavits. In the first affidavit, Jeffrey H. Marsh, the plaintiffs' attorney, attested to his efforts to obtain discovery, the plaintiffs' injuries, and costs. In the second affidavit, Kristina Dahlgren—an expert in satellite systems piracy—attested to evidence of modification and its implications.

<u>Evidence about modification for use in piracy</u>.  The plaintiffs rely on the following deemed admissions to prove that Esparza modified the IRD: (1) Esparza resided at 3545 Running Springs, San Antonio, Texas, at all times relevant to this action;[18] (2) Esparza maintained a residential Dish Network account beginning on or about November 2003; (3) Esparza terminated his account and returned the associated IRD to Dish Network in April 2007; and (4) Esparza or

---

[15]*See* docket entry #14, Jeffrey Marsh's affidavit.

[16]*See* docket entry #s 14, Marsh's affidavit, & 16, exh. A, requests for admissions.

[17]Fed. R. Civ. P. 36(a)(3) states, "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." The plaintiffs' request for admissions was served on Esparza on Sept. 28, 2009.

[18]Esparza actually resided at "354<u>3</u> Running Springs." The reference to "354<u>5</u> Running Springs" appears to be a typographical error. The error is repeated throughout the motion for summary judgment. In light of Esparza's other admissions, the error does not change the result recommended in this report.

his agent modified the IRD to receive Dish Network signals without authorization.[19]

The plaintiffs submitted further evidence about modification through Dahlgren's affidavit.[20] Dahlgren attested that she was employed as a forensic analyst for IRD modifications by Echostar Technologies—a subsidiary of plaintiff Echostar Corporation—during the time relevant to this action. She stated that cable transmission pirates often operate through the use of re-programmed IRD cards or microcontroller devices, both of which allow for reception of unauthorized programming. Dahlgren explained that, in an attempt to reduce piracy, programming providers disable illicit IRD cards or microcontroller devices by deploying electronic countermeasures (ECMs) to change the software code of the receiver. She discussed how pirates responded to ECMs by installing a switch to control the provider's ability to alter the receiver's software—the switch allows periodic software changes required for viewing when turned on, but prevents ECM software changes when turned off.

Dahlgren stated that she conducted the forensic analysis of the IRD Esparza returned. Dahlgren attested that her analysis revealed modifications consistent with piracy, including: (1) the installation of a blocking system and switch, and (2) other signs of alteration including soldering marks and a bore hole. The deemed admissions and Dahlgren's affidavit satisfy the plaintiffs' summary-judgment burden to show that the IRD was modified.

<u>Evidence about knowledge that modification was for decryption</u>.  To prove Esparza or his agent modified the IRD "knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-

---

[19]*See* Fed. R. Civ. P. 36(a)(3). *See also* docket entry #16, exh. A, request for admissions.

[20]*See* docket entry #14, Kristina Dahlgren's affidavit.

to-home satellite services," the plaintiffs rely on the following admissions: (1) Esparza or his agent modified the IRD to receive Dish Network signals without authorization; (2) Esparza used an unauthorized descrambling device to facilitate the unauthorized interception of Dish Network; and (3) Esparza received and/or assisted others in receiving Dish Network's satellite transmissions of television programming without authorization from or payment to Dish Network.[21]

The plaintiffs relied on Dahlgren's affidavit as further evidence of the requisite knowledge. Dahlgren attested that, while a re-programmed IRD card or microcontroller device has limited commercial applications beyond accessing unauthorized programming, the inclusion of the secondary piracy measure—the installation of a switch to avoid ECM software changes—strongly indicates that the modification was primarily for the purpose of unauthorized interception of transmissions.  This evidence satisfies the plaintiffs' burden to show that Esparza modified the IRD knowing or having reason to know that the modification would assist in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services.

Considering the above, there are no genuine issues of material fact which could reasonably be construed in Esparza's favor to preclude summary judgment.  The plaintiffs are entitled to summary judgment on Count 2.

**Damages**

Section 605(e) provides for actual or statutory damages, "at the election of the aggrieved

---

[21]*See* docket entry #16.

party."[22] The plaintiffs elected statutory damages.[23] The plaintiffs "may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just."[24] The plaintiffs seek $10,000 in statutory damages. The plaintiffs are entitled to an award in that amount because they proved Esparza modified an IRD.

### Recommendation

Because the plaintiffs showed no genuine issue of material fact exists as to Count 2, they are entitled to summary judgment and damages on that claim. I recommend that the district court GRANT the motion for summary judgment (docket entry # 14) and enter summary judgment on Count 2 in favor of the plaintiffs. Because the plaintiffs seek the minimal award of statutory damages, I recommend awarding plaintiffs $10,000 as damages. If the district court accepts these recommendations, I will obtain supplemental briefing for an attorney-fee award. I will also ascertain the plaintiffs' intentions as to their remaining claims. Once those matters are resolved, I will submit a supplemental report and recommendation so the district court can enter a final judgment.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be

---

[22] 47 U.S.C. § 605(e)(3)(C)(i).

[23] Docket entry #1, p. 14.

[24] 47 U.S.C. § 605(e)(3)(C)(i)(II).

filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[25] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[26] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[27]

**SIGNED** on June 9, 2010.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[25] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[26] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[27] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).